We will turn to the day calendar. Congratulations. The first case on calendar is J.R. v. The New York City Department of Education. Thank you. Good morning. Good morning, your honors. Mr. Matza-Brown, may it please the court. I'm here for J.R., a young boy with significant learning disabilities and significant emotional disabilities as well. This case comes under IDEA, I-D-E-I-A, as it was revised. And as the court, I'm sure, is aware, there's an administrative process. In this case, the impartial hearing officer, after a four-day hearing, listening to all the testimony, found in favor of the parents that J.R. was entitled to tuition reimbursement at the Winston School. This was for the 13-14 school year. And that's the only year that's in dispute. And surprisingly, the two previous school years were funded by DOE. And every year since, including the present time, including this- That's not binding. That's not a, that has no legal significance. It doesn't. It doesn't, Judge, but it does, it paints the picture that there is no public school appropriate placement for the students, as was found by the IHO. But the only, the thing the IHO seemed to go on, you know, this is an odd case. Usually, such cases have questions about whether the procedure in which the IDEA was made, the qualification of the experts, none of that is here. Here, it's just a matter of the evidence. And it looks as though the IHO went on the fact that he fought, or she fought, that there would be embarrassment if they went from the 12-1-1 to the individuals. But there's nothing in the record to support that, is there? Well, there's, there's, sadly for J.R. back in those days of his life, there's plenty to support that. He had been in a program with two or three teachers in the classroom, and was struggling. His learning issues are extremely severe. His processing issues, and this is a student who really wants to excel. Many, many students shy away, but he, he really wants to excel. So, the, the, the pressure that he puts on himself when he's not capable of keeping up with the lessons leads to, and he has been diagnosed with depression and total isolation, and this is brought out. The, at the CSE review itself, the teachers who had worked with him at the time, said that one-to-one teacher instruction is crucial. Crucial for this child to be able to succeed. But most of the experts that spoke did not say that it needed to be teacher-pupil one-to-one, as against paraprofessional one-to-one, didn't they? I mean, I tried to find in the record expert testimony that supports, not just that this would be better for the child. I think that, that, that, that the private education would be better, but that under the Supreme Court is not enough. It has to be inadequate. Absolutely, and there, but there is the evaluation from Mount Sinai Hospital, which was utilized by the CSE, specifically says that teachers should check in for understanding after instructions have been given or material has been taught. The district court somehow left out the word teachers when, when reviewing the evaluation itself, and then later left out that whole concept in saying that the evaluation is mirrored in the IEP. But to just follow up on Judge Calabrese's question. Yes. If the purpose of the, of the individual instructor is, is to focus the student's attention and to do some repetition. Why do you need someone with an education degree? Well, because, well, first of all, the- Or, or certification for that matter. A, a paraprofessional is, is a high school graduate, not a teacher. This, this student, his difficulty was in actually processing and understanding the information. He, he, he needed to have it taught the, the, the same way that it was initially taught in the classroom. Where he would fall behind very, very quickly because his mind functions that way. And the evaluation. Not every certified teacher is qualified to do that. Well. Because that involves, you know, particular training. And it's not, it's not clear on this record why a paraprofessional cannot be trained similarly. Well, well, your honor, the, the paraprofessional is, is, is simply not a teacher. The the brief that appellees filed at some point says that that, that the paraprofessional would provide access to the information. And, and also the, the understanding I'd just like to get the exact word. And there's nothing in the record that indicates that the paraprofessional is capable of, of doing that or trained to do that. Paraprofessionals just help students very often with physical needs so that, so that. That depends on what paraprofessionals they are. Well. These are psychologists, you know. Some of these paraprofessionals were one thing, some were another. No, no, your honor, if I may say. The, the, the paraprofessionals are recent high school graduates. This is admitted, this is in the record. This is testified to by Nesano Sullivan who's, who's the only witness who testified for the DOE. And in, and in the case of AM decided by this court, and there's so many cases decided by this court, I can list them for you, where there's a, where there's a discrepancy or, or a major dispute between the IHO and the SRO. In AM, in this court this court singled out in 2017, Mr. O'Sullivan saying, thus, the district court's administrative office, officer's reliance on the views of O'Sullivan, which were against the clear consensus of the substance of the evaluative materials present at the CSE. Same thing here. And, and, and. We don't have, we don't have a clear consensus on the other side. We have, we have people disagreeing. This one person, this same Nesano Sullivan who has been specifically called out by this court, very recently. Because all he does is he testifies the same way in case, that's an AM, your honor. AM, the New York City Department of Ed, decided January 10th, 2017. Sullivan is mentioned by name by this court, and for good reason. And why do we have all these cases, Judge, where, where, where we've come to the conclusion that. Didn't O'Sullivan really provide the only evidence as to the the nature of the individual support that he requires? Well, no, he, he was, well, I don't know exactly what the court means by that, Judge Jacobs. The, O'Sullivan was their only witness. Just as in AM, he was their only witness. He says the same thing in virtually every case, and they have this case. I, I, I do understand that experts frequently say the same thing in every case, because they have, they are consistent. No, no, Judge. I mean, if they said a different thing in every case, they would be called out for that. Judge, we have to look at the individual needs of a child. We're not dealing with. Correct. We're not dealing with a manufacturing issue, where, where maybe experts will say the same thing. This, this child's educational history. Where's the, where's the, yeah, I'm sorry. I'm sorry. I'm sorry. What was the objection to the IEP? The objection to the IEP. You made it. At what time? It was made at the CSE. I put in the parent's entire testimony on that subject. And the objection I got was that she felt that the, that the school, that the school was not supplying, not fulfilling the expectations of the IEP, and that was a debate. Maybe I'm wrong on that, but I thought the IEP correctly, everybody seemed to agree on the problem here. The problem is, everybody does agree with the problem, and the IHO specifically. Yeah, that's what I think. Came up with a conclusion that, that the, the, that he would do better in another, in another environment. But, but the SRO felt that the environment that, that the, the plan that the school was going to offer to fulfill the expectations of the IEP was, was satisfactory. It, it, it achieved a, a fate. Well, the SRO said that, but the SRO said that in all of the other cases that were reviewed by this court, AM, CF v. New York City, CL v. New York City, these are all cases that had to be decided by this court. But. To, to, to, to put down poorly reasoned SRO reversals, automatic reversals. Counsel, counsel. Yeah. Trouble, the funny thing about this case is that, as was just pointed out by Judge Walker, that there's agreement on the underlying documents, that the testimony is all pretty much there. And all that you have is a reading of this, and a judgment in one direction by the IHO, and a judgment in the other direction by the SRO. And in those things, our cases say, that since we're not in a position to make a judgment de novo about this, that we follow the SRO. Well. Unless the SRO is clearly flawed. And, you know, what they say sounds sympathetic, but in terms of what our power is, aren't we pretty well bound, unless there is a clear, you know, clear errors by the SRO, to follow the SRO. Well, this is such a case, and it's as clear as can be. And any analysis of the IHO decision, it's, it's, it's really flawless in terms of saying what JR's needs are, and what he will need from there. This is an experienced IHO who made this, made that decision. The, the, it's not a dispute or a difference of opinion. It really focuses on the unique needs of this child. And it's not a coincidence that the Department of Education has continued to fund his education at the Winston School. I mean, we are asked to- We have that argument. You've reserved three minutes of rebuttal. We've run over, but we'll hear you for three minutes anyway on rebuttal. Thank you. We'll hear the other side. Thank you. Good morning. Good morning, your honors. I'm Daniel Matzo-Brown, Assistant Corporation Counsel on behalf of the Appellee. I think as your honors have recognized, the SRO decision here is well-reasoned and careful, and is entitled to deference. I have just one problem with that, and that is the district court, in its opinion, suggests that the SRO was not well-reasoned. And that's, you know, again, as I was saying to opposing counsel, if it is well-reasoned, that pretty well settles it for us. But there is this comment by the district judge, and I don't quite know what to do with it. Your honor, you're right. The Judge Towns, I think, as I see it, is saying the SRO's decision is not perfect and could be better reasoned. That's not the standard to apply here. And as far as I can tell- If the decisions are perfect, none of them would be. That's true, we would have- Not even ours. We would never make it to this court, your honor, if that were the standard. Yes, so as I re-judge Towns' decision, the supposed, I guess, deficiencies, if you want to call them that, in the SRO's decision, have to do with him not doing more, in her view, to link the student's needs, which the SRO very carefully set forth and had a very strong understanding of, not doing everything that the SRO could have to link those needs to what was on the face of the IEP. But as Judge Towns held, and correctly so, on its face, the IEP was very much appropriate, and the evidence very much supports the SRO's decision.  It's not over the IEP's findings about his disability, correct? Well, your honor, the dispute here is whether facially the IEP is substantively appropriate, which, as you, your honor, in the RA decision emphasized, that on questions of substantive adequacy of the IEP, deference to the SRO is particularly important. That was a phrase used in that decision. And the narrow challenge raised by the appellants here is the question of what level of one-to-one support is appropriate, is needed to enable meaningful progress, how often, by whom? And according to the appellants, there's some undetermined amount of one-to-one teacher support that is necessary under the IDEA to enable meaningful progress. There is absolutely no evidence to support that view, and there's certainly no clear consensus, as is required under AM, to overturn the SRO's sound decision here. I do want to touch on the IHO decision for a few minutes, just because so much of that was discussed when my colleague was speaking. I think it's clear from our brief at pages 44 to 46 that there are at least two serious flaws with the IHO decision. One, which your honor has discussed, which was this idea that the IHO relied on heavily, that the one-to-one pullout sessions, right, the individual support that they're now complaining about. It was from speech language therapists and counselors, that that would cause undue embarrassment. Now, the mother admitted at the impartial hearing that she believed the one-to-one supports in the IEP were appropriate. So any argument that they did not raise on appeal would be waived in any event. The mother admitted that those one-to-one interventions were appropriate. So the IHO is really going very far afield of the evidence before him in sort of sua sponte, raising this issue, which no one's arguing. Right. I'm not altogether sure that a parent's professional views on education matter. I mean, the focus is on the child, not whether the parents are happy. That's right, your honor. And I think that, again, that's the second flaw in the IHO's decision, which, I'm sorry. The point is that the fact that the parent says, oh, it's okay that way, does not determine the case. This is not saying this argument. And the point that opposing counsel makes is that if you look at the whole structure, it is obvious on the structure that this child would be embarrassed by being pulled out, which is what the IHO went on. Now, is that enough or not? But I wouldn't call it a waiver. Okay, so that's fair, your honor. But so I think waiver may have been the wrong word for me to use, and I'll concede that. What's abundantly clear is, nor did the lawyers, nor did any experts, did anybody testify about embarrassment, and no one's made that argument. That was raised sui sponte by the IHO. It was never made before or after. It's not raised on appeal either, right? So that ground for the IHO's decision has never been advocated by anyone, either a lawyer or an educational expert or anybody. And that's one flaw on the IHO's decision. And the second- I get the feeling from reading this case that this kid admirably recognized his disabilities and was determined to try and overcome them and did it in a socially appropriate way so that he wasn't intimidated by a plethora of students around him. Twelve students versus seven or whatever it was wouldn't seem to make much of a difference in a case like this. That's right, your honor. And that was one thing that the DOE school psychologist testified about at length was, this is a student who is showing a great deal of promise, and DOE, under its obligation to put him in the least restrictive environment, doesn't want to put him in a situation where he doesn't have enough social experiences. Where the DOE school psychologist, who again is the only educational expert to have testified here, testified at length about this issue that's now raised on the appeal. The only issue, which was whether one-to-one teacher support as opposed to one-to-one support from speech therapists, from counselors, support from a paraprofessional is appropriate. He testified at pages CA 54 to 55, 64, 82 to 83, and 129 to 30 on that very issue. And the notion, the notion that Mr. O'Sullivan is somehow getting up and reciting what is called boilerplate in the reply brief is completely belied by the record. He testified for hours, for more than 100 pages of testimony in the transcript. Indeed, it's the only transcript that the appellants agreed to even put in the record. The suggestion that he put in the mother's testimony is, again, false. The DOE had to put the mother's testimony in because the appellants insisted it was irrelevant to the issues on appeal, even though it was a primary basis for the IHO's decision. So Mr. O'Sullivan testified at length about the student's needs and about why those needs were met by the IEP. That was unrebutted by any other witness at the hearing. And therefore, DOE certainly met its burden of showing the appropriateness of the IEP with that testimony, the SRO was entitled to credit that testimony. And there is no clear consensus at all in any other evidence that would compel a reversal here. I think it just bears a little bit of discussion of why the IEP on its face is appropriate, and the evidence underpinning the SRO's determination on that point. The Mount Sinai report, which was a report that I believe was commissioned by the parents, or sort of the parents obtained this report, recommended a small special education program, which is what DOE offered here. It recommended counseling, which is what DOE offered here. It recommended specific interventions and supports that were placed in the IEP, in which Dr. O'Sullivan testified that the paraprofessional would assist in implementing. The appellants talk a bit about how the Mount Sinai report talks about teacher check-in, and seems to suggest that the district court is either intentionally or mistakenly sort of misrepresenting that point. I think that one of your honors touched on an important point on that issue, which is that there's, first of all, nothing about one-to-one teacher support in the Mount Sinai report. Teacher check-in for understanding, as I understand it, and my wife's been an educator for quite some time, means checking in with students to make sure they understand, so that can be done in a class of 30 students. You can say, Jonathan, can you repeat back the instructions to the class, things like that. There's nothing about teacher check-in that is inherently one-to-one ever. And also, that list of interventions in the Mount Sinai report were simply things that the author of that report thought would be likely to be beneficial to the student. None were even listed as being necessary in that report. Opposing counsel said that the district court omitted the word teacher on a one-to-one in what it said. What do you say about that? Right, so that's the point I was just trying to address, and I'm not doing it in the most articulate way. Yes, so what my colleague is referring to is in the Mount Sinai report, and I can give you the citation for that just so we're all on the same page there. It's on page CA-174, so it's page 174 of the confidential appendix. There's a list of interventions and accommodations that the report concludes would, quote, likely benefit the student in his comprehension of lessons. And one of those talks about teacher check-ins. It does not say one-to-one teacher check-ins, but it says teacher check-in for because no witness was called, but my understanding of teacher check-in for understanding is you ask students if they're understanding, you make sure they're following the instructions. It doesn't say one-to-one in the report. And the appellant faults the district court for when summarizing or quoting or paraphrasing that report, it just says check-in for understanding without talking about teachers. Again, going back to the RE decision, this distinction between supports provided by teachers and supports provided by paraprofessionals is precisely the sort of question upon which deference is owed to the SRO. Professionals, high school graduates, they can be college graduates, I assume, as well. They certainly could be, and I think- They're simply not, they don't have teacher certification. That's right, Your Honor, and nor did the quote-unquote focus teacher at the private school placement that they, you know, keep relying on others, did she have certification? I just want to end with this quote from Judge Walker from RE, because I think it is very important here, in which he wrote- He may have changed his mind, you know. If you have, please let me know while I still have time to respond. The adequacy-  Go ahead. Okay, I'll put in a letter, okay. The adequacy of a one-to-one paraprofessional support, as opposed to one-to-one teacher support, is precisely the kind of educational policy judgment to which we owe the state deference. Thank you. Thank you. We'll hear rebuttal. Okay, so the parents did not admit to anything, I'm not sure what counsel is talking about. Would you please talk in the microphone? Oh, I'm sorry, I apologize. There was no admission of anything on the part of the parents, in terms of agreeing or disagreeing with the proposed IEP. The parent was unequivocal, and I put in her entire testimony into the reply brief, that she had reasons, and good reasons, and that she was advised that her son needed that level of support. The teachers who participated in the CSE meeting from the West End Day School, they all said it. One for this student is crucial. The teachers who then appeared at the hearing, because it came after the full year at the Winston School, they all said that he absolutely needs that one-to-one focus. Because if he doesn't understand the material, and it's not a matter of having a bad day or something. If he doesn't understand the material, slowly but surely, he shuts down. And what could be worse, from an educational point of view, than having a student who shuts down, isolates himself, pulls back from the entire learning experience? These were the needs of this student. The law provides to look at the unique needs of each student, not to talk in generalities. But I just want to bring one thing to the court's attention, which I wasn't aware of until I reread the papers. The appellee in its brief writes that the paraprofessional, because we talked about that just now, the paraprofessional would be able to assist JR in comprehending or accessing the class lessons and activities. Well, accessing is in quotes, because that was Mr. Sullivan's testimony that he would help in accessing. Comprehending, though, that's a little trick they're trying to do. They're trying to tell you the para is going to help him comprehend. And that's because- Isn't checking in helping someone comprehend? It would be, but- Do you got it, or don't you? It could be, and it might be, but Nesano Sullivan himself testified that the para can only help access. They don't teach, and the reason that this word comprehending is in here is because the evaluation says that the teacher should check in for understanding of the lessons taught, understanding, comprehending. So they're trying to get by that, put that in the brief. But in fact, if there were another teacher to help him, that would be a different program. That's a different program. And RE is very clear that a poorly decided SRO decision, which only recites and then comes to some conclusion, but doesn't in any way, neither the SRO nor the district court in any way dealt with the IHO's concerns, which she articulated, spelled out, based on the record. Everybody agrees that that's the record that she relied on, and there's really no explanation for it. Thank you. Thank you. Thank you both. We will reserve decision.